UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GLOBAL FLEET SALES, LLC, R.M. ASIA (HK) LIMITED, RMA MIDDLE EAST FZE, RMA AUTOMOTIVE CO., LTD. and KEVIN ROBERT WHITCRAFT,<br><br>    Plaintiffs,<br><br>v.<br><br>LEONARD JAMES DELUNAS and MOHAMMAD ("DAVID") WAHAB,<br><br>    Defendants,<br>_____/<br><br>LEONARD JAMES DELUNAS and and DAVID WAHAB<br><br>    Defendants/Counter-Plaintiffs,<br><br>v.<br><br>KEVIN ROBERT WHITCRAFT, R.M. ASIA (HK) LIMITED, and RMA MIDDLE EAST FZE,<br><br>    Plaintiffs/Counter-Defendants. | Case No. 12-15471<br>Honorable Laurie J. Michelson<br>Magistrate Judge R. Steven Whalen |

**OPINION AND ORDER GRANTING IN PART
DEFENDANTS' MOTION TO STRIKE [149]**

The parties in this case all agree that in 2002 Leonard Delunas and Kevin Whitcraft went into business together to sell various goods and services to the United States military and others in Afghanistan. But, as their competing summary judgment motions make clear, they disagree on nearly everything else, including the nature of their arrangement, who cheated whom or failed to properly perform during the course of the arrangement, and who continued to wrong whom after

the relationship deteriorated in 2011. Plaintiffs Kevin Whitcraft and a group of companies associated with him under the umbrella of the RMA Group filed suit against Delunas and his associate, Mohammad Wahab in December 2012. (*See generally* Dkt. 8, Am. Compl.) Delunas and Wahab (Defendants) filed a counterclaim. (*See generally* Dkt. 19, Counterclaim.)

On March 30, 2016, Plaintiffs filed a motion for partial summary judgment to enforce a purported "separation agreement." (Dkt. 129, Pls.' Mot. Summ. J.) Their theory is that when Delunas and Whitcraft met in September 2011 to discuss the termination of their business affairs, they reached an enforceable agreement, leaving the amounts owed under that agreement as the only remaining issue for resolution. (*Id.* at 2.) Plaintiffs in part based their theory on one of the attachments to a May 5, 2013 email that Delunas sent to Wahab. Plaintiffs included the email and all of its attachments as Exhibit 7 to their summary-judgment motion.

Defendants have moved to strike Exhibit 7 in its entirety. (Dkt. 149, Defs.' Mot. Strike.) Defendants say that Exhibit 7 contains attorney work product that they inadvertently produced to Plaintiffs, and that pursuant to a stipulated protective order, Plaintiffs have waived their right to challenge that assertion. After careful consideration of the briefs and thorough review of the record, the Court finds that oral argument will not aid in resolving the pending motion. *See* E.D. Mich. LR 7.1(f)(2). The Court agrees that under the protective order, the time for Plaintiffs to challenge whether the attorney work product doctrine protects Exhibit 7 has passed, and as a result, certain portions of the exhibit should be stricken.

**I.**

Exhibit 7 includes a May 5, 2013 email that Delunas sent to Wahab along with over a hundred pages of attachments. Delunas copied the email address of Dr. Najib Baba, whom Delunas avers he has retained as a consulting expert in this litigation. (*See* Pls.' Mot. Ex. 2,

2

Delunas Decl. ¶ 4.) In the email, Delunas posed a number of questions relating to the litigation strategy for this case. (*See* Ex. 7, DELEMAIL0070907-00001.) Many of the attachments are business records that are clearly not attorney work product. But one attachment, which is at the center of the present motion to strike and was heavily relied on by Plaintiffs in their motion for partial summary judgment, is a May 4, 2013 "Briefing Paper" that on its face clearly states that Wahab prepared the document for his counsel, Edward Pappas of Dickinson Wright. (*Id.*, DELEMAIL0070913-00001.) Delunas says that he drafted the email and briefing paper "with the intent that Mr. Wahab would present the e-mail and documents to Mr. Pappas as background material and as part of an overall discussion of strategy exclusively for Dickinson Wright's use in preparing for litigation and/or settlement." (Delunas Decl. ¶ 3.)

The briefing paper includes an overview of the RMA Group of Companies and a description of the history of the parties' business activities in Afghanistan. (*See* Ex. 7, DELEMAIL0070913–00002—00010.) Importantly for Plaintiffs' theory in their summary-judgment motion, the briefing paper also makes certain characterizations about the September 2011 meeting, including that "Mr. Delunas met with Kevin Whitcraft in London in September 2011 to negotiate an amicable settlement" and that "The terms of that settlement included the following main points." (*Id.*, DELEMAIL0070913–00010—00011.) The briefing paper then lists those points—15 in total. (*Id.*, DELEMAIL0070913–00011—00012.)

According to Defendants, a third-party email hosting service, AccessPoint, produced Exhibit 7's contents to Plaintiffs in February 2015 as part of a production of hundreds of thousands of documents. (Defs.' Mot. at 2.) Counsel for Defendants maintain that while they "diligently ran searches for privileged and work-product documents" prior to the production and that the documents are "clearly identifiable as work product-protected materials," they

3

"inadvertently overlooked" these documents. (*Id.*) And according to Defendants, they first became aware of the production at Delunas's July 28, 2015 deposition, prompting an immediate objection. (*Id.* at 4.)

## II.

The theme of Plaintiffs' response to Defendants' motion to strike is that the motion is "too little, too late." (*See* Dkt. 153, Pls.' Resp. at 1–2.) Plaintiffs maintain that the motion is too little because Exhibit 7 "is not protected by the work product doctrine." (*Id.* at 1.) Plaintiffs say the motion is too late because Defendants have waited close to a year before formally trying to remedy their production of the allegedly protected documents. (*Id.* at 3.) But the parties' November 2014 stipulated protective order that the Court entered in this case (Dkt. 65) suggests instead that the arguments raised in Plaintiffs' response are too little, too late.

Paragraph 13 of the protective order provides a procedure for the inadvertent production of privileged or otherwise protected documents. First, the producing party must provide notice: "If a Producing Party determines that a privileged or otherwise protected document has been produced, the producing party shall provide notice to the Receiving Party requesting the return of the document and that all copies and images of the document be deleted or destroyed." (Prot. Order ¶ 13.B.) The order imposes several requirements for such a claw-back notice:

> [The] [n]otice shall be served upon counsel of record for all parties, and shall contain information sufficient to: 1) identify the document, including information as necessary to locate the document within the materials produced; 2) identify the privilege or protection alleged; and 3) explain the basis for the invocation of the privilege or protection.

(*Id.* ¶ 13.C.) As to the form of the notice, the order provides, "The notice referenced in ¶ 13.B. shall be in writing, unless written notice is unfeasible due to exigent circumstances, for instance, such as when the Producing Party first becomes aware of production of a document when the

4

receiving party discloses it for use at a deposition or hearing." (*Id.* at ¶ 13.C.) After the producing party provides notice, the receiving party "must promptly return, sequester, or destroy the document or redact the portion of the document identified in the notice, and may not use or disclose the document or information identified by the producing party until the claim is resolved." (*Id.* ¶ 13.D.) The "Receiving Party may challenge the assertion of any privilege or other protection contained in the notice," but "[a]ny motion challenging an assertion of privilege must be filed within thirty (30) days from the receipt of the notice." (*Id*. ¶ 13.E.)

The parties do not dispute that Defendants first became aware of Exhibit 7's production at Delunas's deposition. When Plaintiffs' counsel attempted to introduce the briefing paper as an exhibit, Defendants' counsel provided sufficient notice that he viewed the briefing paper as protected work product. Defendants' counsel identified the documents by Bates number, asserted that the work product doctrine protected the documents, and explained the basis for invoking that protection. When Plaintiffs' counsel attempted to mark the contents of Exhibit 7 as an exhibit, Defendants' counsel stated, "I'm going to object to the use of this document on the basis that all of your questions covered some ground. You never asked him whether he consulted for Dr. Baba to assist him with this litigation, and if you did, I believe the answer would be in the affirmative." (Defs.' Mot. Ex. 3, Delunas Dep. at 112.) Defendants' counsel then specifically addressed the briefing paper: "I'm going to object. DELEMAIL0070913-0001 [the starting Bates number for the briefing paper], specifically states it was prepared for counsel. . . . This is clearly on its face protected by the Attorney Work Product Doctrine, should not be marked or used, and I will not allow questioning on it." (*Id.* at 113.) He then instructed Delunas not to answer any questions, but Plaintiffs' counsel advised that he would nonetheless "go ahead and make a record." (*Id*. 113–14.) At that point, Defendants' counsel said, "I just made my instruction and

5

I'm expecting you to comply with your ethical obligations to advise us if there's a document that's protected by either attorney-client work product, which this clearly is. It says it's being prepared for Ed Pappas and—the fact that you try to mark this and use it, I suppose, says all that needs to be said but you can make your record." (*Id*. at 114.)

Plaintiffs claim that what transpired at Delunas's deposition was insufficient to satisfy the protective order's notice requirement because Defendants' counsel did not expressly request for the documents to be returned or destroyed. (Pls.' Resp. at 9, 18–19.) But given the circumstances—where counsel for Defendants' realization that the document had been produced unfolded during a deposition—the Court finds that his dogged and repeated assertions of protection under the work product doctrine at that deposition were sufficient to qualify as the notice contemplated under paragraph 13 of the stipulated protected order. Moreover, because Defendants first became aware of Exhibit 7's production at Delunas's deposition, they were under no obligation to provide a written claw-back notice to assert their claim of work product protection.

After Defendants gave notice of their assertion of work product protection, the obligation shifted to Plaintiffs to "promptly return, sequester, or destroy the document or redact the portion of the document identified in the notice," and they could "not use or disclose the document or information identified by the producing party until the claim [was] resolved." (Protective Order § 13.D.) They did no such thing. Instead, Plaintiffs used the documents in connection with two motions. First, they attached the briefing paper and cover email as an exhibit to their October 5, 2015 brief responding to Defendants' motion to compel. (Dkt. 108, Pls.' Resp. to Defs.' Mot. to Compel, Ex. 2.) Months later, Plaintiffs then attached the same documents to their summary-judgment motion.

6

In both briefs to which Plaintiffs attached the disputed documents, Plaintiffs argued that the documents were not subject to the attorney work product doctrine, raising issues similar to the ones they pose in their response here. (*See* Pls.' Resp. to Defs.' Mot. to Compel. at 13 n. 6.; *see also* Pls.' Mot. Summ. J. at 6 n. 5.) Plaintiffs' arguments are not unreasonable. For instance, factual background material such as that in the briefing paper is generally entitled to less protection than opinion work product. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) ("So-called fact work product, the written or oral information transmitted to the attorney and recorded as conveyed by the client, . . . may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. . . . However, absent waiver, a party may not obtain the opinion work product of his adversary." (internal quotation marks and citations omitted)). And there is reason to believe that by transmitting the briefing paper to Dr. Baba, Delunas waived any work product protection. Indeed, Defendants have offered little evidence to confirm that Delunas had retained Dr. Baba as a consulting expert for this litigation at the time Delunas sent him the briefing paper in May 2013. Delunas's declaration describes Dr. Baba as "my financial advisor and consultant on Afghan regulatory matters . . . who I have retained as a consulting expert in this case." (Delunas Decl. ¶ 4.) But he fails to say when he retained Dr. Baba. And all that Defendants offer on the timing is a September 2012 email showing that Dulanus referred to Dr. Baba as his "financial advisor" in a communication about settlement discussions, (Dkt. 154, Defs.' Repl. Ex. 1), and an April 2013 email from Delunas to RMA's U.K. counsel in which Delunas wrote, "I agree to appoint Dr[.] Baba and Dr[.] Djanbaz my full authority to negotiate and reach a settlement with you," (Defs.' Repl. Ex. 2). But neither of these communications shows that Delunas retained Dr. Baba specifically as a consulting expert for this litigation.

7

Nonetheless, Plaintiffs' challenges to Defendants' work production assertion are too late. Under the protective order's terms, if Plaintiffs wished to challenge the assertion of work product protection that Defendants made at Delunas's July 2015 deposition, they should have done so within 30 days. They did not. So they cannot do so now. Still, the Court sees no reason to sweepingly strike all of Exhibit 7 and its hundreds of pages of attachments. The briefing paper is the heart of Defendants' motion and their assertion of privilege, and it is the only portion of Exhibit 7 that Plaintiffs rely on in their summary-judgment motion. So the Court will grant the motion to strike for the briefing paper alone.

### III.

For the reasons discussed, Defendants' Motion to Strike Exhibit 7 to the RMA Plaintiffs' Motion for Partial Summary Judgment to Enforce the Separation Agreement (Dkt. 149) is GRANTED IN PART.

IT IS ORDERED that Plaintiffs must promptly return or destroy any remaining copies of the briefing paper portion of Exhibit 7 (Bates Numbers DELEMAIL0070913-00001 through DELEMAIL0070913-00012) in their possession and refrain from using the documents for the remainder of this litigation. IT IS FURTHER ORDERED that the following docket entries containing the briefing paper are STRICKEN: Dkt. 108–3, Exhibit 2 to Plaintiffs' Response to Defendants' Motion to Compel; Dkt. 129–8, Exhibit 7 to Plaintiffs' Motion for Partial Summary Judgment; and Dkt. 149–2, Exhibit 1 to Defendants' Motion to Strike.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: June 17, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 17, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson
